Good morning, Your Honors. My name is Jim Loebsenz. I represent Karen Haugen and her son. I'd like to reserve five minutes for rebuttal. What I propose to do with my time is not to discuss absolute immunity this morning because I believe that that's adequately covered in my brief, and because it's my guess that the Court is going to be more interested in qualified immunity. Because I believe that the Court is going to be more interested in qualified immunity and because that is a very fact-intensive kind of inquiry, I am going to do something I don't normally do, which is begin by discussing a number of the facts. Maybe you could focus on, at least for my benefit, what statement in the dependency petition is false? I'm a little confused, Your Honor, because I don't have a claim that she filed a false dependency petition. I do have a retaliation claim, but not a falsification claim. I have a substantive due process claim, a procedural due process claim, and a retaliation claim. On retaliation, how do you get around the problem of absolute immunity for deciding whether to file petitions for a prosecutor or somebody in a quasi-prosecutorial position? I mean, suppose an assistant DA decides to indict somebody for a crime purely to retaliate against them and somehow offended the assistant DA. As I understand it, the assistant DA still has qualified immunity. I agree. That's the Milstein case, Your Honor. And maybe the simplest thing for me to do is just show that the reason why Mr. Milstein lost is the same reason why Ms. Haugen should win on that claim. The Milstein opinion, which is, I think, maybe what you were referring to,  I was thinking of a case I know of, of real people, where I know the people, but it's been litigated. That sort of thing's been litigated. Milstein's an example. Mr. Milstein, he made that same argument. I mean, he said, that's what they did to me. And the panel in Milstein went through the case law about prosecutorial immunity and said, oh, they discussed Buckley and Burns and finally Kalina. And Kalina, you know, I'm very familiar with Kalina because- That's your bottom line. We diverge and we diverge and we diverge. What are you trying to say? Well, I'm trying to say that- You don't allege any misrepresentations in the petition, and yet you say it's retaliatory. Yes, Your Honor. Kalina held that if Ms. Kalina had not filed an affidavit under perjury, that she would have had absolute immunity, but that she has- There's not an affidavit here. Yes, there is, Your Honor. Excuse me. I thought we were talking about the petition. Are we talking about the petition or are we talking about something else? The petition begins with, I represent to the court, and ends with- We're talking about a separate affidavit. The petition, Your Honor. The petition has to be verified. That's by law. So, of course, it's verified. Doesn't that distinguish it? The normal prosecutor doesn't have to verify. In order to even file a petition in Washington, you've got to verify it. Is that not right? No, I don't think that's right. Oh, you mean for a dependency petition? Yes. For a dependency petition- That's what this is. Yes, Your Honor. So it had to be verified, correct? Yes. All right. So the petition had to be verified. So it's a little different from somebody just coming in and saying, oh, well, I'm going to swear to this, but prosecutors don't have to swear to things, and that's sort of what that case was about. He sort of acted like he was participating. But this petition has to be verified by definition, right? And there's nothing – there's no misrepresentation in it either, correct? Yes, Your Honor. I'm not alleging that there's a misrepresentation, although I did allege that there was a conflict between one statement, that the child does have to be removed from the home, and another statement that it hasn't been decided whether the child has to be removed from the home. Sure. But really, Your Honor, in Milstein, the Court said because Milstein does not allege that the appellees who were prosecutors personally swore to the facts in the complaint, absolute immunity is appropriate. In this case, the social worker who's not an attorney and is not a prosecutor and is not representing the State did certify under penalty of perjury and therefore acted like a complaining witness just like the prosecutor in Kalina, and just as the prosecutor in Kalina doesn't have absolute immunity, my position is on that claim, neither does Ms. Fields. Right, but the prosecutor didn't have to verify, and she did, correct? She couldn't start a petition at all without verifying, correct? Under Washington law, a prosecutor doesn't have to file anything to file an information, to file a charge, but to get an arrest warrant, they do have to file something. Sure. And they did. They filed a certification of probable cause, and in the old days, prosecutors used to sign those, but after Kalina, they now have detectives sign those because whoever signs those doesn't have absolute immunity. Can I ask another question? This is a different issue. The notice, your notice argument is quite attractive in many ways. Difficulty I'm having with the notice argument, and maybe you can help me with it, is In re Castillo, or Curry versus Castillo, seems to say that giving notice is a judicial function, and therefore is covered by judicial immunity, absolute judicial immunity. How do we deal with that? I guess I'm afraid that because I'm not able to conjure up Castillo right now, I'm not sure how good an answer I can give you. I don't know whether it's Castillo of an era before or after Kalina and Antoine, and those things, because there's been kind of a revolution in this area. Castillo comes out of bankruptcy, but it's a question of whether a bankruptcy trustee, who is not an adjudicated person, in failing to give notice is entitled to absolute judicial immunity, and in Castillo we seem to say, well, giving notice of judicial hearings is a judicial function and is entitled to absolute immunity. I find that hard to grasp, but I'm asking your view on that. Is Castillo a 1980s, 1990s, 2000? 2002. Well, all I can say really is that I believe it's settled in Beltran and in Miller and by the U.S. Supreme Court now that if you want absolute immunity, the burden is on the party seeking it to identify a common law counterpart immunity. Let me take notice and recast it slightly, because she told the juvenile court judge what she did by way of notice, and the court made some effort to make a phone call or have its clerk make a phone call or call the gender of the judge. In fact, the court was the one that made the judgment with regard to notice. The court was the one who was willing to take action after having heard from Ms. Fields what was done to accomplish notice. Why isn't that a judicial decision? Why doesn't that become a supervening cause? Well, I think the simplest answer to that is Malley v. Briggs, Your Honor. I think it has been settled since Malley v. Briggs that just because a court issues an order or directs something does not relieve. Your injury comes not from the lack of notice. Your injury comes from the court's taking action and issuing an order. I think that was rejected. Can I read from Malley v. Briggs one passage, Your Honor? Well, then I'll read another one to you, but go ahead. Okay. Petitioner insists that he's entitled to rely on the judgment of a judicial officer, in that case, in finding that probable cause exists and hence issuing the warrant. This view of objective reasonableness, and they're using here qualified immunity, not absolute, is at odds with our development of the concept. That's the concept of objective reasonableness. The question in this case is whether a reasonably well-trained officer in a petitioner's position would have known that his affidavit failed to establish probable cause and he shouldn't have applied for the warrant. And if you substitute social worker for well-trained officer and basically child seizure warrant for warrant, that's his case. Now, the court in Briggs specifically said, we think judges sometimes face overworked dockets and sign warrants and things that they shouldn't sign. And they said... Let's come to the facts of this case. And let's come to what the court also said in Malley, which is that qualified immunity provides ample protection to all but the plainly incompetent or those who knowingly violate the law. And we don't have here a stack of paper put in front of a judge who's routinely signing. We have a hearing where there's actual dialogue with regard to what notice was given. For the life of me, I'm having trouble figuring out how it is that Mrs. Fields, Ms. Fields falls in this category of either plainly incompetent or those who knowingly violate the law with regard to notice. She's not likely to know that better than the judge is. And the judge decided to go forward with the order after hearing what notice was given. So how is it that she's liable? Oh, I think she's plainly incompetent, Your Honor, for a number of reasons. Well, so far we've asked you what was said, what was unfair or not appropriate or was false in the petition, and you've said you've got nothing to point to. What is it? The problem with it is that there isn't anything in the petition about imminent danger. And the problem with it is that she knows there isn't any imminent danger. She herself waited ten days before doing anything about this. This thing was classified as non-emergent. She herself testified that she went to the home expecting to close the case after offering the father safety locks. She herself acknowledges that she would have been happy with a summons asking the parents to come to court and bring the child. She herself acknowledges that she would be happy to have just seen the child for five minutes and then give the child back. She has no idea why she didn't ask the court for that instead of a child removal order. Well, she is – no, stop there. My impression was that there's really not an alternative, that this was put forward because the court has a procedure for the dependency petition. But is there a procedure that says, I just want to go look at the kid for five minutes? Well, I guess that – I think she's picking up what she can pick up off the shelf. That procedure would be, I think, a search warrant, basically a warrant, some order that says you may go to the house and you're authorized to go inside and look at the child, which is something the police did ten days before she tried to do it. And on that occasion, the parents, the father, let the police inside. The police saw the child. The police saw the child was perfectly okay. And now the social worker is back ten days later wanting to come into the house again, and the father says no, which he has – And it's the judge who says, no, I think I want to have the parents come in to see me. So it's the judge who decides not to approve what amounts to a check-them-out-for-five-minutes process and who says, no, we're going to keep this alive because I want to talk to the parents myself. And despite the fact that the judge authorized that, Briggs holds that, in that case, a detective, the officer, the state official, is liable despite the magistrate's authorization if they were plainly incompetent, if they were objectively unreasonable. Who's the officer in this case? She doesn't seize the child. The police do. She's asking for the removal order. She's got an order. She gives it to the police. And she does to the police, and they assemble this SWAT team, and she sits off about 200 yards from where the house is. But they execute the order, right, the police? They execute the order. Let's say that we accept for purposes of discussion your suggestion, which I think is plausible, that the social worker had it in for these parents because they were rude and insulting to her, they were not respectful, and the father threatened to sue her. And they really did not think there was an immediate emergency with the child, as is demonstrated by the very substantial delays before they did anything about seeing the child. Let's assume all that. I still don't understand why qualified immunity doesn't protect the social worker or absolute immunity for part of that. Well, on the substantive claim, it would have to be at least plausibly, objectively reasonable to think that the child was in imminent danger. Otherwise, she doesn't have qualified immunity. It seems to me as though when I read the dependency petition, she has something. The kid walked into traffic twice. It's not like there's nothing there. It's just that I can't help but wonder when I look at the record whether she would have cranked up the whole apparatus if she didn't really want to get the parents for being disrespectful to her. Well, the first time the kid walked in traffic was nine months earlier, and they closed the case on the same day. The second time the kid was seen running down Lilac Lane was 19 days. Nineteen days later, she filed this petition. And in Calabretta, this court said that when a social worker enacted this, this court said that Calabretta was notable for its lack of exigency. A huge difference that I wrote into Calabretta, a couple of them. One of them is Calabretta, they barged into the house without a search warrant. And here, they ran it by a court. Yes, and I repeat that both Frigg's and the Ombach decision of this court in Miller says that that does not help you. If it was objectively a reasonable supposition. That's why I asked you my first question, what did she lie about to the judge? I mean, the judge could read it. I would have been inclined if I were the judge reading it to say, gee, when I was a little kid in the Bronx, four years old, my parents would let me play in the street, play on the sidewalk. We played ball in the street. That explains a lot. I can't remember if it was stickball, but, you know, cars that come down the street, we'd get out of the street. We'd walk down to the park, jump off the rocks. If I'd have been the judge, I would have really wondered, is it such a big deal? The kid is out in the street playing or not playing or being out in the street. I would have had to wonder. But she did run it by a judge, and she didn't lie to the judge. Yes, I agree to that. And I don't think that that gets her given Miller. It distinguishes Calabretta. It distinguishes Calabretta because there was no warrant. It's not a jail-free card, but it's a statement of whether the conduct was reasonable. It is a reasonable thing for someone to do, to go in front of the judge. But not if you have no basis to think that the child is in imminent danger of a serious harm. It's not a reasonable thing to do, then, unless you have ---- The judge heard what she had to say and decided to ask for something or to order something more than she asked for. So the judge may be immune, and that's just how it is. But somehow it makes her action look somewhat more reasonable to me if she didn't ask for something as strong as the judge decided to do. The judge is immune. But just as the police officer in Raleigh was not immune, just because the judge was. And I really want to focus on what the court said there about overworked dockets. It said if this was a perfect world, judges wouldn't issue any warrants or orders that weren't supported by probable cause. Or in this sense, it's sort of a seizure, an arrest warrant, supposed to be supported by imminence. If it was a perfect world, that wouldn't happen. But judges sign stuff when they don't have the time that they should have. And they have people who are giving them incomplete information. She gave him incomplete information. She didn't tell him a lot of things, which would show that there wasn't imminence. And she didn't include anything that would show that there was imminence. And they said it is not an adequate reason to let either the detective off the hook or, in this case, the social worker, that you ban it by a judge. And you've got the judge to okay it. It objectively wasn't supported by any evidence of imminence. It was 19 days after the child had been seen running in the street that she brought this thing. She filed this thing. You are repeating yourself. You're way over your time. You're over time. I think probably I ought to wind it up. Well, what I meant, I meant that's it. I agree. Thank you, counsel. Good morning, Your Honor. May it please the Court. I'm John McElhinney, appearing on behalf of Molly Fields, defendant Molly Fields in this case. Although the state agrees with the district court that Ms. Fields is entitled to absolute immunity on the notice issue, I would like to focus my argument this morning on. Help me a little bit on the notice issue. When I looked at the record of the notice, let's see, I put a sticky on it so I could find it and ask you this. Hi, this is Molly Fields again from Children's Services. Per our earlier conversation, you stated that if we wanted to see your child, we needed to get a court order. That's what we're in the process of doing. Now, a parent receiving that notice would think she's calling to say that there's a hearing where they're going to try to get the judge to let her see the child. But as it turned out, it wasn't just a hearing to let her see the child. It was a hearing to take the child away, take custody of the child. I wonder if that still falls within her immunity, and I wonder if I have the facts right that she's given notice. It's a little bit like sending somebody a summons and complaint for a claim of $50, and it turns out to be $5,000. Not a good sum. Your Honor, you're reading from ER 182, which is a transcript of two of the three phone messages that Ms. Fields, correction, Ms. Haugen received on the day before the hearing, the afternoon of the day before the hearing. That's right. That second phone message specifically advises Ms. Haugen that we're going to seek an order that you asked us to get. And, in fact, all we want to do is see the child. We wanted to see your child. Right. And Ms. Haugen, in her deposition, I would think the parents said you're not going to see the kid unless you get a court order. She gets a court order. She can see the kid. Okay. We don't have to not show up at our Social Security hearing in order to fight that. We really don't have any fight. We're just making her jump through the hoops. Okay if she sees the child. All right. So let me refer you to the petition. And in ER 460, which is the Well, they didn't get a copy of the petition. They did not. But just to make the point, Your Honor, Ms. Fields did not seek anything more than she advised Ms. Haugen that she was going to seek. So as far as the notice goes, she gave adequate notice, actual adequate notice of the very thing she sought. Now, the thing that maybe gets confusing in this case is that she sought something different from what the court eventually ordered. And she doesn't have a responsibility to speculate as to what the court might finally do at the hearing. What she did was she sought to see the child. That's what she told Ms. Haugen that she was going to do. Once she got the hearing, and in fact at 460, she says, we just want to see the child. I looked at the petition. Right. I'm referring to The department is required by law to see the child and is asking the court to order the parents to make the child available, which is just what you just said, and to comply with services. And then it says it has not yet been determined if the child needs to be removed from the home to achieve these goals. And that is true. That is true. That's the eminence issue that Mr. Lobson was talking about. But that's different from But the notice that she gave on the phone doesn't say it's up in the air whether we'll take the kid away. It doesn't have to be, Your Honor. That notice on the phone doesn't have to say that because all she's seeking in this petition is to see the child. And she's not going to this court. I can't tell if that's what that it has not yet been determined sentence means. It's worded in the passive avoid responsibility tense. I think courts make those determinations rather than social workers. So maybe she's saying it hasn't been determined if the court is going to remove the child. I don't know. Well, let me tell you that The passive voice there makes it hard to figure out what she's saying. RCW 1334-050 is the statute that governs the notice under these circumstances. 050 sub 2 advises that if there is no finding or recommendation or discussion of imminency by the social worker when the petition is filed, then notice has to be given to the parent. It doesn't say what quality of notice is required to be given to the parent. So this caseworker in I think pretty elementary due process would be if you're going to seek a remedy from a court to do something, the notice that you would have to give would be of what you're going to be asking the court to do. Yes, Your Honor, and that's exactly what it is. You couldn't deceive people by saying I'm asking the court to do something you would have no reasonable objection to and actually ask the court to do something a whole lot more aggressive. That's correct, Your Honor, and that's exactly what she did to this, the notice she did give in this case. And once she got to the hearing, they asked Incidentally, above that, a CPT was held to determine what further action needed to be taken. It was recommended that the child be removed from the home. I don't know what a CPT is, and it may bear on what that passive phrase that has not yet been determined means. What's a CPT? It's a coalition of citizens' protective team, and if you look at ER 450 You mean citizens' protective team? Well, it's a coalition of persons who will meet and review these kinds of matters to give advice to the social worker. So some coalition had determined that the child should be taken away. If you look at ER 450, Your Honor, what the team recommended was this. After they wrote down the factual information, consult AG again. CPT recommends requesting a pickup order if the AG agrees that there is cause to proceed. But then in the next block down, under Comments and Justification, what it says is this. It is the danger seeing the child would create worth the initial face-to-face. Quote, need court to order to see child. Need court order to see child. And that's what Ms. Fields was doing. She was following that instruction by the CPT to get a court order to see child. I don't think I made my question quite clear. It looks to me like the CPT, this coalition, says, at least as she puts it in the petition, that the child should be removed. And then she says that it has not yet been determined if the child needs to be removed. So it looks as though what that means is I'm going to ask for an order to see the child and the judge will determine whether the child needs to be removed, but she only gives notice that she's seeking an order to see the child. Because the CPT has already determined that the child should be removed. So when she says it has not yet been determined, it sounds as though she must mean the judge has not yet determined. What she means by that phrase, I believe, Your Honor, and it's tough to speculate what's in the mind of this caseworker at that time when she files the petition. I don't really care subjectively. What I care about is what it means. But I think what she means is that under 050, I haven't determined that this is an imminent risk of harm situation at this time, and therefore I gave notice. So when she says it has not yet been determined, she means I have not yet determined? Correct. Or she didn't just say I have not yet determined?  So she doesn't use this funny phrasing, it has not yet, to mean something different from I have not yet? Well, I'm not sure why she used that phrasing, Your Honor. Ordinarily you'd use that phrasing to mean somebody else is going to make the determination. Perhaps, perhaps. But I believe what she's saying is that she has not determined that there is an imminent risk to this child at this time, and so therefore all she wants to do is see the child. That's what I believe the order, the petition actually speaks for itself. All she really wants to do is see this child, Your Honor. That's all she is asking the court to do. And if you look at the transcript of the record of the court proceeding, what you find is the judge questioning her in detail about what kind of notice she gave to these people and then advising that the notice was adequate as far as the court was concerned after the court made an effort to contact Ms. Haugen itself, and then on its own made an independent determination that there was immediate risk of harm to this particular child. Now, once the court makes that decision at that hearing, given all the facts, and counsel has already advised that there were no fabrications, purposeful fabrications of evidence here, once that determination of imminence by the independent judicial body is made, it's like a Terry stop as far as the mental state of the officer regarding probable cause. If there was, in fact, probable cause at the time of the stop, then there's probable cause and the officer hasn't violated the constitutional rights. The same in this case. Once the judge makes an independent determination based on all the facts, then notice in this case isn't even necessary. As you know, if the facts are obviously insufficient, you can't act on them. Now, whether an officer pursuant to court order, people are getting analogized to warrants and Terry stops, but that's a different question, really. Because we know that a warrant issued on plainly insufficient facts is not sufficient to protect the officer who executes the warrant. We know that. That's clear, right? That is clear. We're not talking about a warrant. We're talking about a court order after a hearing. Isn't that a different set of... Well, that is a different setting. And first of all, the petition itself is testimonial. The affidavit in the petition itself is testimonial. It's not the investigative phase of this case. And it's entitled to the same absolute immunity, witness immunity, as is oral testimony at the hearing under Burns v. County of King. She in fact got a court order, a valid court order from the judge and is entitled to rely on that order when she goes out to execute it. She doesn't have to second-guess the court at the time she goes out to execute this order. She acted reasonably, first of all, in following the juvenile court rules and other statutes in providing the notice. Once she got the court order, which was... When you say she executed the order, I don't quite understand because I don't know all the Washington procedure. But it appears to me that police officers executed the order and she took the order to the police officers, I assume. Yes, that's what I mean, Your Honor. But it appears to me that they executed it. She didn't. That is correct. What happened was she went from the court to the law enforcement because the judge had anticipated that she would need to have law enforcement help her do this. And then law enforcement actually went out and executed the order. And incidentally, both of these parents at the time were arrested at the scene, which again places this case in an emergent situation. Suddenly she's faced with, at the scene, this child handed to her after both parents are arrested. That may, in and of itself, be another imminent risk of harm situation where she can take the child and no notice is required. But under every circumstance... I don't know if we can work back from that. And I don't know if it doesn't cut both ways. I mean, they pepper sprayed mom and they pepper sprayed grandma. I'm not trying to work back from that. I'm just saying that when she actually took physical custody of that child, that was an emergent situation in and of itself. What I'm saying is she's entitled to absolute judicial immunity for the execution of this order. And she's entitled to rely on this valid court order. Now, I believe she acted, the bottom line is she acted under any objective reason. She actually thought there was any emergency because of her lengthy delays. What was it, 15 days or 19 days between the second time the kid was running around on the street and when she went to court to do something about it? From the time of the first referral. That is like Calabretta. She's given 10 days. And so seven days later she made contact with the parents and they said go get a court order. That is like Calabretta where the social worker tells the court there's an emergency, but she went on vacation between the time the evidence of the supposed emergency came in and when she went to court. She didn't tell the court, Your Honor, all due respect, she didn't tell the court that there was an emergency here. What she said was, I, under the regulations in Washington, I'm required to see this child so I can close this investigation. I need to see this child. The CPT said go get an order to see this child. So she did. And so she told the court, I need to see this child to close this investigation. I haven't determined whether or not there's immanency in this situation yet. Please give me an order. And the judge independently at that point, based on all the evidence, and there were no fabrications in that evidence, said, I think there's immanency here. Go get the child. And so that's the order she was operating under at that point. The delay in this case that you talk about is dissimilar to Calabretta in the sense that she tried remedial processes from the time the referral was made until she actually went to court. You'll recall there's a letter that she wrote to the family at ER 448 that clearly lays out her responsibility. There was no response to that. She then went to the CPT and asked for guidance. She went to her supervisor and asked for guidance. Then she went to the court and asked to see the child. That's all she asked for. Thank you, counsel. I think we ran through all the time for the appellant, didn't we? Oh, yeah. Thank you, counsel. Hougan v. Fields is submitted.
judges: Fernandez, Kleinfeld, Clifton